IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| JEFFREY BRADBY, *et al.*, *on behalf of themselves and all individuals similarly situated*, | ) ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25CV26 (RCY) |
| | ) | |
| DAN KOETTING, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

The above-styled class action alleges violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act as well as claims for unjust enrichment and common law conspiracy arising from a tribal lending scheme. The matter comes before the Court on three Motions to Compel Arbitration (collectively, "Arbitration Motions") filed by different Defendant groups. The Arbitration Motions are ripe for review. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Arbitration Motions will be denied.

**I. RELEVANT PROCEDURAL HISTORY**

Plaintiffs filed their Complaint, initiating this action, on January 15, 2025. ECF No. 1. Defendants MRC Consulting, LLC, PG2, Mark Koetting, and Russell Myrick (collectively "Avail Blue Defendants") filed their Motion to Compel Individual Arbitration and Memorandum in Support thereof on April 14, 2025. Avail Blue Mot., ECF No. 61; Avail Blue Mem. Supp., ECF No. 62. Plaintiffs filed their responsive Memorandum in Opposition on May 19, 2025. Pls.' Opp'n Avail Blue Mot., ECF No. 101. The Avail Blue Defendants did not file a reply.

Defendants Dan Koetting and Jairo Perez filed their Motion to Compel Individual Arbitration and corresponding Memorandum in Support on April 21, 2025. Koetting & Perez Mot., ECF No. 68; Koetting & Perez Mem. Supp., ECF No. 69. Plaintiffs filed their responsive Memorandum in Opposition on May 25, 2025, Pls.' Opp'n Koetting & Perez Mot., ECF No. 120, in response to which Dan Koetting and Jairo Perez filed a Reply on June 17, 2025, ECF No. 150. Dan Koetting and Jairo Perez are affiliated with Defendants GDA Consulting Group, LLC; Benchmark Consulting and Management, LLC; KP Investment Group, LLC; and Envision Management, LLC (collectively, "Envision Corporate Defendants"). Koetting & Perez Mem. Supp. 1. The Envision Corporate Defendants separately moved to compel individual arbitration, incorporating all points and authorities from the briefing in support of Dan Koetting's and Jairo Perez's motion. *See* ECF Nos. 71, 72, 151. *See also* Envision Corporate Defs.' Reply, ECF No. 151. In their Response, Plaintiffs accordingly adopted the same arguments presented in their brief in opposition to the Koetting & Perez Motion. *See* ECF No. 127.

The Court accepted notices of supplemental authority filed by the moving Defendant groups, *see* ECF Nos. 243, 260, 274, as well as Plaintiffs' responses to those notices, *see* ECF Nos. 257, 271; Orders, ECF Nos. 271, 276, 278. The Court also granted Plaintiffs' Motion for Leave to File Supplemental Authority, ECF No. 280, as relevant to the instant Arbitration Motions, and it considered briefs filed by the Defendant groups in response, as well as Plaintiffs' reply, *see* ECF Nos. 283, 284, 285; Order, ECF No. 286.

## II. BACKGROUND

This tribal lending case is a spin-off from a Western District of Virginia case, *Fitzgerald v. Wildcat*, 687 F. Supp. 3d 756 (2023), which was a suit against tribal officials of the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe" or "LDF") and several non-tribal

LDF business partners for participation in "a usurious lending scheme that offered illegal loans with unconscionable interest rates." Compl. ¶ 1. The *Fitzgerald* litigation resulted in a nationwide class settlement. *Id.* ¶ 2.

In this suit, Plaintiffs—who were class members in *Fitzgerald*—target as Defendants certain loan servicing companies and their leaders, all of whom Plaintiffs allege were "other major participants" in the lending scheme at issue in *Fitzgerald* but who "were not identified until August 2024" and thus were excluded from the *Fitzgerald* settlement agreement. *Id.* There are five distinct groups of Defendants that Plaintiffs allege worked with tribal lending entities to market, underwrite, service, and/or collect on short-term loans. Compl. ¶¶ 35–57. Three of those Defendant groups now seek to enforce delegation and arbitration provisions contained in the underlying loan agreements.[1,2] Given the substantial overlap of factual and legal issues among the Arbitration Motions—two of which incorporate and rely on the same facts and arguments—the Court addresses them together, distinguishing between the three groups of Defendants (collectively, "Moving Defendants") as necessary.

## A.  Avail Blue Subclass Loan Agreements

The Avail Blue Defendants seek to compel arbitration based on the terms of the thirty-seven loan agreements executed by the Avail Blue Subclass.[3] All of the agreements contain an

---

[1] A fourth Motion to Compel Arbitration advanced by Jesus Diaz and Unified Analytics, LLC, remains pending in this case. *See* ECF No. 244. Default was entered as to Unified Analytics LLC on April 14, 2025. The Court will take up this fourth Motion to Compel Arbitration and other issues presented by the Defendants that advance it at a later date.

[2] Because the moving Defendants are loan servicing companies and their leaders, they are not named as parties to the underlying loan agreements; it is undisputed, however, that they are entitled to enforce the relevant loan agreements based on their status as related third parties. *See generally* Pls.' Opp'n Avail Blue Mot. (only challenging the substantive enforceability of the arbitration provisions, not Defendants' ability to enforce the relevant provisions of the underlying agreements); Pls.' Opp'n Koetting & Perez Mot. (same).

[3] The Court understands the Avail Blue Subclass to include Plaintiffs Shelley Thomas, Huberta Lewis, and Rachael Simpson. Avail Blue Mem. Supp. 1–2; Compl. ¶¶ 16, 18, 31.

arbitration provision, although there is some immaterial variation in the language of that provision. Avail Blue Mem. Supp. 4–6.  Six of the agreements read, in bold: "This Arbitration Provision provides that all disputes . . . must be resolved by binding arbitration."  *Id.* at 6; Bell Decl. Exs. DD–II, ECF Nos. 62-31 through 62-36.  The remaining agreements provide, in relevant part:

> **ARBITRATION PROVISION**: PLEASE READ THE FOLLOWING CAREFULLY AS IT IMPACTS YOUR LEGAL RIGHTS.
>
> WE, AS A WHOLLY OWNED ECONOMIC DEVELOPMENT ARM, INSTRUMENTALITY, AND LIMITED LIABILITY COMPANY OF THE TRIBE, AND OUR DIRECTORS, OFFICERS, AND EMPLOYEES ACTING WITHIN THE SCOPE OF THEIR AUTHORITY, ARE NOT SUBJECT TO SUIT IN ANY COURT IN ANY JURISDICTION, OR ANY OTHER FORUM, ABSENT A WAIVER OF SOVEREIGN IMMUNITY.  In order to resolve a dispute that we cannot resolve to your satisfaction as set forth above, we consent to a limited waiver of sovereign immunity as expressly set forth below, which is expressly limited by the Arbitration Provision in this Agreement.  This limited waiver is strictly limited to individual arbitration claims set forth below and judicial actions to enforce such individual arbitration awards as strictly limited herein . . . .
>
> **YOU AGREE TO THE TERMS OF THIS ARBITRATION PROVISION AND YOU HEREBY AGREE AND ACKNOWLEDGE THAT YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.**

Avail Blue Mem. Supp. at 5; Bell Decl. Exs. A–CC, JJ–KK, ECF Nos. 62-2 through 62-30, 62-37 through 62-38.

In the "Governing Law" section of the loan agreements, all versions provide that "the laws of the Tribe and applicable federal law will govern . . . without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state."  *See generally* Bell Decl. Exs., ECF Nos. 62-2 through 62-38.  Most agreements further specify, "You agree to be bound by Tribal

4

law, and in the event of a bona fide dispute between you and us, Tribal law and applicable federal law shall exclusively apply to such dispute." *See* Bell Decl. Exs. A–CC, JJ–KK.[4]

All Avail Blue Subclass loan agreements incorporate their governing law provision into the arbitration terms, either expressly or by re-stating the same bodies of governing law in conjunction with a reference to the Federal Arbitration Act (FAA). *See* Bell Decl. Exs. A–CC, JJ–KK ("The arbitrator shall apply applicable substantive law consistent with the Governing Law set forth above, and the Federal Arbitration Act . . . ."); Exs. DD–II ("Arbitrator shall apply applicable substantive law consistent with the law of the Tribe and applicable federal law, and the Federal Arbitration Act . . . .").

All Avail Blue Subclass loan agreements also incorporate AAA rules and procedures. *See* Avail Blue Mem. Supp. 13; Bell Decl. Exs. DD–II ("All parties to such dispute will comply by the rules and procedures of the American Arbitration Association applicable to consumer disputes, to the extent those rules and procedures do not contradict either the law of the Tribe, applicable federal law, the Federal Arbitration Act (9 U.S.C. §§ 1-16), or the express terms of this Agreement."); Bell Decl. Exs. A–CC, JJ–KK ("All parties to such dispute will be governed by the rules and procedures of the American Arbitration Association applicable to consumer disputes . . . ."). The Avail Blue Defendants rely on the integration of AAA procedures plus the broad definition of "disputes" under the agreements to argue that the loan agreements with members of the Avail Blue Subclass delegate questions of arbitrability to the arbitrator. Avail Blue Mem. Supp. 9–10, 12–15 (quoting the "Definitions" paragraphs from relevant agreements,

---

[4] The six outlier agreements state the substantive equivalent:  "You agree to be bound by Tribal law and applicable federal law," before providing contract information to obtain copies of relevant tribal law. *See* Bell Decl. Exs. DD–II.

which specifically assign "[t]he words 'dispute' and 'disputes' . . . the broadest possible meaning").

## B. Bridge-Evergreen Subclass Loan Agreements

Defendants Dan Koetting, Jairo Perez, and the Envision Corporate Defendants (collectively, "Envision Defendants") seek to compel arbitration based on loan agreements between seventeen[5] Plaintiffs (the "Bridge-Evergreen Subclass") and two tribal lending entities: Bridge Lending ("Bridge") and Evergreen Services ("Evergreen"). There are three versions of loan agreements between Bridge and various Plaintiffs and two versions of loan agreements between Evergreen and various Plaintiffs. *Id.* at 3. The most-used version of the Bridge agreement[6] includes the following:

> **Notice:** Any party to a dispute, including you, us and/or related third parties, may send the other party(s) written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, the arbitration shall occur before the American Arbitration Association [unless the parties agree otherwise] . . . . All parties to such dispute will be governed by the rules and procedures of the American Arbitration Association applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Agreement or this Arbitration Provision, including the limitations on the arbitrator below. . . .
>
> . . . . The arbitrator shall apply applicable substantive law consistent with the Governing Law set forth above, and the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") and applicable statutes of limitation, and shall honor claims of privilege recognized at law. . . .
>
> You and we expressly acknowledge and agree that this Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. . . .

---

[5] The Court notes that Dan Koetting and Jairo Perez are aware of only sixteen Plaintiffs who borrowed money from Bridge or Evergreen and have no record of any agreement with Plaintiff Kimberly Webb. Like Dan Koetting and Jairo Perez, the Court will assume for purposes of resolving the Arbitration Motions that Webb did borrow money from Bridge as she alleges and, further, that she signed the Bridge loan agreements then in use which contained arbitration clauses. *See* Koetting & Perez Mem. Supp. 2, n.2.

[6] Defendants Dan Koetting and Jairo Perez refer to this version, used for forty loans amongst twelve Plaintiffs, as the "Second Bridge Agreement." Koetting & Perez Mem. Supp. 6.

Koetting & Perez Mem. Supp. 6–7; Zamurs Decl. Ex. A-2 at 6,[7] ECF No. 69-3.  The agreement

assigns "dispute" the "broadest possible meaning."  Koetting & Perez Mem. Supp. 6.

The Governing Law provision adds:

> **GOVERNING LAW**:  The laws of the Tribe and applicable federal law will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state. You agree to be bound by Tribal law, and in the event of a bona fide dispute between you and us, Tribal law and applicable federal law shall exclusively apply to such dispute.

Koetting & Perez Mem. Supp. 6–7; Zamurs Decl. Ex. A-2 at 6–7.

The four other versions of loan agreements employed by Bridge and Evergreen vary in

form but are substantively the same.  Koetting & Perez Mem. Supp. 3–4.  All versions broadly

define "dispute" and contain waivers of trial by jury; mandatory arbitration provisions; delegation

clauses; waivers of class action participation; and governing law language requiring the application

of LDF tribal law, applicable federal law, and, frequently, the FAA specifically.  *Id.*  Further, all

versions apply LDF tribal law and "applicable federal law" to both the agreements themselves and

to arbitration arising from agreement-related disputes.  *Id.* at 4, 9–10; Zamurs Decl. Ex A-1 at 9–

10, ECF No. 69-2; Ex. A-2 at 6–7, ECF No. 69-3; Ex. A-3 at 5, ECF No. 69-4; Ex. A-4 at 8–9,

ECF No. 69-5; Ex. A-5 at 6, ECF No. 69-6.

### III.  STANDARD

The FAA, 9 U.S.C. §§ 1–16, "governs the rights and responsibilities of the parties with

respect to an arbitration agreement," *Forrester v. Penn Lyon Homes, Inc.,* 553 F.3d 340, 342 (4th

Cir. 2009), and represents "a liberal federal policy toward favoring arbitration agreements," *Moses*

*H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983).  Section 2 of the FAA

---

[7] For this and all other documents, the Court uses the pagination assigned by the CM/ECF system, and not that appearing on the papers themselves.

instructs that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2; *see also Fitzgerald*, 687 F. Supp. 3d at 772–73. "[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Fitzgerald*, 687 F. Supp. 3d at 773 (internal quotation omitted).

## IV.  DISCUSSION

In the Arbitration Motions, Defendants generally ask the Court to compel individual arbitration of Plaintiffs' claims based on the express, unambiguous arbitration provisions of the underlying loan agreements. *E.g.*, Avail Blue Mem. Supp. 1. Defendants further assert that they are "entitled to enforce these agreements, which delegate gateway questions—including arbitrability and the enforceability, interpretation, and validity of the [loan and arbitration agreements] to an arbitrator" both by expressly invoking the FAA and by incorporating the rules and procedures of the American Arbitration Association (AAA). *Id*. at 1–2; *accord* Koetting & Perez Mem. Supp. 2. Meanwhile, Plaintiffs challenge the enforceability of the arbitration and delegation provisions in the relevant loan agreements primarily on the basis that the agreements prospectively waive whole bodies of law and accompanying remedies. The Court appreciates that, as stated in Dan Koetting and Jairo Perez's Reply, "judges have disagreed on whether the prospective waiver doctrine applies to [waivers of] state law." Koetting & Perez Reply 16, ECF No. 150. However, in the absence of specific guidance on the issue from the Fourth Circuit or the United States Supreme Court, this Court is persuaded that the doctrine indeed applies to the waiver of state law and thus that the delegation and arbitration provisions at issue here are unenforceable.

Although only some Defendant groups care to acknowledge it, the Western District's related *Fitzgerald* case examined substantively equivalent arbitration and governing law language

8

drawn from analogous loan agreements between another non-tribal payday lender and a class of individuals who took out short-term, high-interest loans.  In fact, the quoted arbitration provision and governing law sections considered in *Fitzgerald* are equivalent, and, in part, identical to those cited in the Bridge agreement discussed in this Opinion, above.  *See Fitzgerald,* 687 F. Supp. 3d at 771.  The Western District found in *Fitzgerald* that both the delegation clause and the arbitration provision at issue were unenforceable as violations of public policy.  Adopting the same reasoning, this Court reaches a parallel outcome:  the delegation and arbitration terms that the Avail Blue Defendants, Dan Koetting, Jairo Perez, and the Envision Corporate Defendants seek to enforce against Plaintiffs are unenforceable for contravening public policy.  *See Fitzgerald*, 687 F. Supp. 3d at 777–78.

## A.  Delegation Clause Enforceability

Parties to an arbitration agreement may agree to "delegate[] 'gateway questions of arbitrability, such as whether the parties have agreed to arbitrate,' to an arbitrator."  *Id.* at 773 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019)).  "[W]hen a litigant specifically challenges the enforceability of an arbitration agreement with a delegation clause, the challenge must be submitted to the arbitrator *unless* the plaintiff has lodged a specific objection to the delegation clause."  *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020) (emphasis in original).  If such a specific objection is made, a court may consider it.  *Id.* (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).  "A party may 'contest the enforceability of the delegation clause with the same arguments it employs to contest the enforceability of the overall arbitration agreement.'"  *Fitzgerald*, 687 F. Supp. 3d at 773 (citations omitted).

All versions of the loan agreements contemplated by this Opinion purport to delegate questions of arbitrability to the arbitrator either via express delegation provisions, broad definitions of "dispute," and/or incorporation of AAA procedures. Avail Blue Mem. Supp. 1; Koetting & Perez Mem. Supp. 16–19. Plaintiffs properly challenge the validity of delegation provisions insofar as they lodge specific objections against the enforceability of the delegation language. *See* Pls.' Opp'n Avail Blue Mot. 22–24, ECF No. 101 (employing the section header, "delegation clause is equally unenforceable under the Fourth Circuit's precedent"); Pls.' Opp'n Koetting & Perez Mot. 24–26, ECF No. 120 (same). The Court may thus consider these objections, notwithstanding the overlap with arguments used to contest the enforceability of the arbitration agreements more broadly. *See Gibbs*, 966 F.3d at 291; *Fitzgerald*, 687 F. Supp. 3d at 773.

## B. Prospective Waiver

"Courts 'must enforce arbitration agreements on an equal footing with other contracts and may invalidate an arbitration agreement based on generally applicable contract defenses.'" *Fitzgerald*, 687 F. Supp. 3d at 774 (cleaned up) (quoting *Hengle v. Treppa*, 19 F.4th 324, 334). Prospective waiver doctrine is one such generally applicable defense. *Id.* "Under this doctrine, 'an agreement that prospectively waives a party's right to pursue statutory remedies is unenforceable as a violation of public policy.'" *Id.* (quoting *Hengle*, 19 F.4th at 334); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 n.19. Choice-of-forum and choice-of-law clauses that operate in tandem as a prospective waiver of a party's right to pursue statutory remedies are similarly unenforceable as a violation of public policy. *Gibbs v. Haynes Invs*. *LLC*, 967 F.3d 332, 340. "The doctrine reflects the broad principle that arbitration provides only an alternative forum for resolving disputes and should not change the nature of the underlying rights at issue." *Harris v. W6LS, Inc.*, 2026 WL 1641195, at *7 (7th Cir. June 5, 2026).

10

In applying prospective waiver doctrine, "the Fourth Circuit has repeatedly refused to enforce arbitration agreements that limit a party's substantive claims to those under tribal law, and hence forbid federal claims from being brought in arbitration." *Fitzgerald*, 687 F. Supp. 3d at 774 (cleaned up) (collecting cases).

Here, the loan agreements between Plaintiffs and Moving Defendants limit the law applicable to the agreements to laws of the Tribe and applicable federal law. Avail Blue Mem. Supp. 6–7; Koetting & Perez Mem. Supp. 4–5, 7, 9–10. The Avail Blue Defendants argue that prospective waiver doctrine is inapplicable where, as here, the loan agreements "do not waive any rights, but rather contain routine choice-of-law provisions." Avail Blue Mem. Supp. 15. The Avail Blue Defendants further posit that prospective waiver doctrine does not apply when a loan agreement expressly preserves rights under federal law, because the doctrine "does not exist to preserve state substantive rights." *Id.* at 16. The Envision Defendants make largely the same argument, explaining that, in earlier tribal lending cases, "the Fourth Circuit invalidated arbitration agreements, under the prospective waiver doctrine, where federal rights were not preserved. But, in the instant case, the loan agreements provide that the arbitrator will apply the laws of the Tribe ***and federal law***." Koetting & Perez Mem. Supp. 19 (emphasis in original). The Envision Defendants thus conclude that prospective waiver doctrine "does not apply here" because Plaintiffs can effectively vindicate their federal statutory rights, and prospective waiver doctrine does not exist to preserve state substantive rights. *Id.* at 19, 21.

While acknowledging that most cases applying prospective waiver doctrine involve the prospective waiver of federal law, Plaintiffs look to recent guidance from the United States Supreme Court in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), and subsequent federal court applications of that case to insist that prospective waiver doctrine *is* applicable to

11

contracts that waive substantive rights under state law.  Pls.' Opp'n Avail Blue Mot. 8, 13–14, Pls.' Opp'n Koetting & Perez Mot. 8–9; 14–17.  Thus, Plaintiffs argue, the prospective waiver doctrine renders the arbitration provisions in the loan agreements at issue here unenforceable.  Pls.' Opp'n Avail Blue Mot. 11, Pls.' Opp'n Koetting & Perez Mot. 11.  Plaintiffs directed the Court's attention to *Harris v. W6LS, Inc.*, in which the United States Court of Appeals for the Seventh Circuit found it "need not reach the untrodden ground of prospective waiver of state-law rights post-*Viking River Cruises*" but acknowledged that the Supreme Court in that case "at the very least strongly suggests" that an arbitration agreement which "forces borrowers to prospectively waive their state-law rights" is impermissible.  Pls.' Mot. Leave File Suppl. Authority 1–2; *Harris*, 2026 WL 1641195, at *7.

This Court appreciates that the question of whether prospective waiver doctrine extends to state law remedies has become a muddied legal issue.  Plaintiffs' position, however, emerges as the most compelling approach in light of the Supreme Court's reasoning in *Viking River Cruises*.  Reviewing the purpose and meaning of the FAA, the Supreme Court explained in *Viking River Cruises* that an arbitration agreement "does not alter or abridge substantive rights; it merely changes how those rights will be processed."  596 U.S. at 653.  The Court reasoned that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum."  *Id.* (internal quotation omitted) (quoting *Preston v. Ferrer*, 552 U.S. 346, 359 (2008)).  A clarifying footnote reveals that Viking argued, just like the Moving Defendants do now, "that the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes."  *Id.* at 653, n.5.  In response, the Supreme Court unambiguously stated:  "This argument is erroneous.  The basis of this principle is not anything unique about federal statutes."  *Id.*  Adopting Moving Defendants'

12

position here—that the loan agreement arbitration clauses, in conjunction with governing law provisions, permissibly take all bodies of state law, and all state law remedies, off the table—would require ignoring the Supreme Court's clear pronouncement. *See Hengle*, 19 F.4th at 347 (explaining that lower federal courts "cannot ignore the Supreme Court's explicit guidance simply by labeling it 'dicta[,]'" and are in fact "obliged to afford great weight to Supreme Court dicta." (citations omitted)).[8]

This Court's understanding of prospective waiver doctrine as contemplating—and prohibiting—the exclusion of both federal and state statutory remedies is consistent with related Fourth Circuit precedent in the tribal lending area. In at least four prior tribal lending cases, the Fourth Circuit "has assessed arbitration provisions requiring application of tribal law to the practical exclusion of other law." *Hengle*, 19 F.4th at 336 (referencing *Hayes v. Delbert Services Corp.*, 811 F.3d 666 (4th Cir. 2016); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017); *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332 (4th Cir. 2020); and *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286 (4th Cir. 2020)). For example, in *Dillon*, the Fourth Circuit found an arbitration agreement applying "tribal law *to the exclusion of federal and state law*" to be unenforceable as a matter of law because terms throughout the loan agreement disavowed the application of state and federal law and forbade an arbitrator from applying the applicable law. 856 F.3d at 336 (emphasis in original). And in *Hayes*, the Fourth Circuit "recognize[d] that the FAA establishes a liberal federal policy favoring arbitration agreements" but still reversed a district court decision compelling arbitration because, "rather than us[ing] arbitration as a just and efficient

---

[8] The Court acknowledges that the Western District of North Carolina recently decided that the prospective waiver doctrine applies only to the waiver of federal—not state—statutory rights in an analogous case, *Bridges v. Raines*. 2025 WL 3565343, at *5 (W.D.N.C. Dec. 10, 2025). However, by discounting the *Viking River Cruises* language on account of its status as a footnote, the *Bridges* court writes around the Supreme Court's plain characterization of that very conclusion as erroneous. *See id.* at *4–5. With respect for the reasoning of the *Bridges* court on what is clearly a difficult and evolving issue, this Court believes *Fitzgerald*, not *Bridges*, models the proper prospective waiver analysis post-*Viking River Cruises*.

13

means of dispute resolution, [the defendant sought] to deploy it to avoid *state and federal law* and to game the entire system." 811 F.3d 666, 676 (4th Cir. 2016) (emphasis added) (cleaned up). The Court has similar concerns in this case.

The loan agreements before the Court on the instant Arbitration Motions all mandate that an arbitrator apply Tribal and applicable federal law to the exclusion of all state substantive law. Avail Blue Mem. Supp. 6; Koetting & Perez Mem. Supp. 4–9. The governing law and arbitration provisions operate in tandem to prevent an arbitrator from applying state law and thus prospectively waive Plaintiffs' rights to pursue state substantive remedies. *See Fitzgerald*, 687 F. Supp. 3d at 777. Additionally, the Court would be remiss not to highlight Moving Defendants' invocation of "applicable federal law" when the loan agreements do not clearly define exactly which federal laws are "applicable" in the universe they have devised. The resulting vagueness with respect to "applicable federal law" thus leaves open the possibility that Plaintiffs are further foreclosed from federal statutory rights and remedies that exist outside of the FAA. In effect, the loan agreements at issue would require arbitrators to determine whether the arbitration provisions impermissibly waive state (and federal) substantive rights without recourse to state (and at least some, undefined proportion of federal) substantive law. Such a result directly contravenes the foundational principle of the prospective waiver doctrine, that is, arbitration ought to provide an alternative forum for dispute resolution, without changing the nature of the underlying rights at issue. *See Harris*, 2026 WL 1641195, at *7. The Court therefore concludes that the delegation clauses and arbitration provisions described herein are unenforceable as a violation of public policy. *Accord Fitzgerald*, 687 F. Supp. 3d at 777.

## V.  CONCLUSION

For the reasons described herein, the Court will deny the instant Motions to Compel Arbitration.  Having found the delegation and arbitration provisions in relevant loan agreements unenforceable for contravening public policy, the Court need not reach the issues of consideration or equitable estoppel otherwise briefed by the parties.[9]  The Court also need not reach the issue of whether individual or class arbitration is appropriate, having found the arbitration clauses unenforceable in their entirety.

An appropriate Order will issue.

_____ /s/

Roderick C. Young
United States District Judge

Date: June 18, 2026
Richmond, Virginia

---

[9] Moving Defendants all argue that the doctrine of equitable estoppel also requires Plaintiffs to arbitrate their claims.  Avail Blue Mem. Supp. 10–12; Koetting & Perez Mem. Supp. 14–16.  The gravamen of this argument is that Plaintiffs cannot escape contractual obligations to arbitrate disputes while relying on other terms of the same contracts to assert their claims.  Avail Blue Mem. Supp. 10; Koetting & Perez Mem. Supp. 14–16.  This Court's finding that the arbitration provisions in the loan agreements considered herein are unenforceable due to the prospective waiver of state statutory rights and remedies moots the question of whether Plaintiffs should be equitably estopped from avoiding the arbitration provisions.  The Court will, however, note the irony that "*state law* contract principles determine whether a non-signatory can enforce a contract, and thus an arbitration agreement, through equitable estoppel."  *See Franklin v. Cleo AI Inc.,* 2025 WL 1540924, at *2 (4th Cir. May 30, 2025) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (emphasis added)).  The Court will not permit Moving Defendants to treat state law as applicable only when convenient or favorable for their position.

15